IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

01 JUN 11 AM 9:47

THE REGENTS OF THE UNIVERSITY
OF NEW MEXICO,

   Plaintiff and Counterdefendant,

vs.

Cause No. CIV-99-577-JC/WWD

GALEN D. KNIGHT, an individual;
and TERENCE J. SCALLEN. an individual;

   Defendants and Counterplaintiffs.

## DEFENDANT SCALLEN'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. Introduction

Based on the Court's Rulings (*Docs*. 191 and 226) the remaining Counts are I, III, V, VI (Knight), and VII. Plaintiff has stated in the Pretrial Order and the Pretrial Conference that it will not pursue Counts V, VI, and VII at trial.

Therefore, Counts I and III remain.

### A. Count III

Regarding **Count III**, the following statements are relevant:

  In the Pretrial Order (page 4, D. 1.) **Plaintiff** states:

> "In Count III, a declaration that Defendants Knight and Scallen are the only joint and properly named inventors of the Vitaletheine issued Patents is sought."

  In the Pretrial Order (page 5, a.) **Knight** states:

> "That Knight and Scallen be declared the only, joint and properly named inventors of the Vitaletheine Issued Patents and of any patents or applications deriving therefrom, and containing much the same compounds and utilities;"

  In the Pretrial Order (page 9, paragraph 3) **Scallen** states:

> "With regard to **Count III** the Court has already declared (*Doc*. 191, Order 9) that Knight and Scallen are the only and properly named Inventors of U.S. Patent

1

> 5,370,868, vitaletheine modulators in neoplasia. Scallen seeks an extension of that order by the Court to include U.S. Patent 5,578,313, U.S. Patent 6,096,536, and related patents and applications derived therefrom."

It is clear from the above statements that all three Parties are in agreement as to Count III. Therefore, Scallen is willing to stipulate that Knight and Scallen are the only true and properly named inventors of:

a) the Vitaletheine Issued Patents (U.S. Patents 5,370,868, 5,578,313, and 6,096,536);

b) the three 1992 vitaletheine modulator CIP patent applications (07/941926, 07/010892, and 07/928725; and

c) any patents or applications deriving therefrom and containing much the same compounds and utilities.

## B. Count I

Regarding **Count I** the Court has indicated that ownership of the vitaletheine modulator patents and patent applications will be determined after consideration of the issues concerning the insertion by amendment of new matter *three years* after the filing of the 1992 CIP vitaletheine modulator applications. [Clearly, the CIPs themselves by definition contained "new matter" when they were filed in 1992; this new matter was the result of the substantial new experimental work by the Inventors following the filing of the original 1990 Applications.]

## II. Findings of Fact

1. 1983-1986—vitaletheine modulator inventions conceived and reduced to practice by Knight and Scallen. Invention Disclosure made to Dean Napolitano on October 31, 1986.

2. 1983 University Patent Policy claims initial ownership by UNM of the Knight and Scallen Inventions.

3. July 6, 1990—three U.S. Patent Applications filed on the vitaletheine modulators.

2

4. March/May 1991—separate Assignments for each of the three 1990 vitaletheine modulator patent applications by the Inventors, Knight and Scallen, to UNM.

5. August/September 1992--three CIP Applications concerning the vitaletheine modulators were submitted to USPTO with the knowledge and consent of the Inventors, Knight and Scallen. The Combined Declaration and Power of Attorney documents were signed by Knight and Scallen. No assignments were requested by UNM.

6. December 6, 1994--based on one of these CIP Applications U.S. Patent 5,370,868, *Vitaletheine Modulators in Neoplasia*, was issued.

7. September 1994--new attorneys, without Power of Attorney from the Inventors, assumed the patent prosecution of these applications.

8. In late 1994 to 1996--the University's agents (Christopher Murray, Hauser Chemical; and Shield Wallace, PAI) attempted to synthesize the vitaletheine modulators, failing to precisely follow the method of synthesis taught in U.S. Patent 5,370,868 and in the corresponding 1992 PCT Patent. The resulting compounds differed substantially from the authentic vitaletheine modulators taught in U.S. Patent 5,370,868. The differences between the Hauser/Wallace compounds and the authentic vitaletheine modulators are further substantiated by the differences in chemical characterization, e.g., elemental analysis, infrared (IR) spectra, and mass spectra. Neither UNM nor the licensee (Dovetail Technologies, Inc.) have provided evidence that these substituted compounds have any biological activity whatsoever.

9. 1995-1996--amendments to the applications were submitted to USPTO by UNM without the knowledge or consent of the Inventors, changing the structures of the active compounds included in the 1992 CIP Applications and taught in U.S. Patent 5,370,868.

10. 1996-1997--after learning of the unauthorized substitution of incorrect structures into the patent applications, Knight and Scallen vehemently protested to UNM, the patent attorneys involved in patent prosecution, and to USPTO.

11. May 22, 1996—Ms. Annabelle Quintana, University patent administrator, submitted to USPTO a document claiming full right, title, and interest in the vitaletheine modulator applications derived from the 1992 CIPs, even though assignment of these CIP applications by the Inventors had neither been sought nor obtained as required by USPTO MPEP 306.

12. November 26, 1996--U.S. Patent 5,578,313 issued, containing the substituted, incorrect structures, together with the same experimental data which had been obtained by Knight and Scallen using the correct structures (as reported in U.S. Patent 5,370,868), except that Table 1 was falsely changed by UNM.

13. November 26, 1996--the only Inventor Declaration contained in U.S. Patent 5,578,313 was the same Inventor declaration signed by Knight and Scallen on August 10, 1992, swearing to the accuracy of the structures and experimental data included in the 1992 CIP application which resulted in U.S. Patent 5,370,868.

14. December, 1996—UNM patent administration office asks Knight and Scallen for assignments of the 1992 CIP Applications.

15. 1997--the Inventors protested [to Ms. Quintana, UNM patent administrator; Mr. Estes, UNM council; and USPTO] the erroneous nature of the structures contained in U.S. Patent 5,578,313, as well as the unauthorized, improper, and false changes made by UNM to Table 1 in this patent.

16. January 29, 1998—UNM "**assigned**" all three 1992 CIP vitaletheine modulator applications and the resulting U.S. Patents (5,370,868 and 5,578,313) to the United States government, i.e.,

the National Institutes of Health (NIH); UNM also assigned to NIH the two 1992 CIP beta-alethine applications and resulting U.S. Patent (5,643,966)!

[Scallen only very recently received evidence concerning this "assignment". These Abstracts of Title from USPTO are therefore attached hereto. See Exhibit 1.]

17. May 21, 1999—UNM filed suit against Knight and Scallen, seeking assignment of the 1992 CIP Applications which UNM had already "assigned" to the National Institutes of Health in 1998.

18. August 1, 2000--U.S. Patent 6,096,536, purportedly derived from the 1992 CIP application 07/941926 *Vitaletheine Modulators in Cell Cultures and Therapy*, was issued. This patent also contains the same unauthorized and incorrect structures for the vitaletheine modulators as contained in U.S. Patent 5,578,313. The only Inventor Declaration included in U.S. Patent 6,096,536 was that signed by Knight and Scallen in 1992 when the CIP application was filed.

19. 1996-present—based upon information provided it appears that all pending vitaletheine modulator applications, including *Vitaletheine Modulators in the Prophylaxis and Treatment of Disease*, have also been amended by UNM, amendments which were unauthorized and contain incorrect structures for the vitaletheine modulators.

## III. Conclusions of Law

### A. New Matter

#### 1. Insertion of New Matter Invalidates Patents.

The chemical structures of the vitaletheine modulator compounds as exemplified in the 1994 U.S. Patent 5,370,868 must be considered presumptively correct (35 U.S.C. 282).

35 U.S.C. 282, "Presumption of validity; defenses", states in pertinent part:

"A patent shall be presumed valid."

U.S. Patent 5,370,868, issued December 6, 1994, contains the correct and authentic structures for the vitaletheine modulators and is presumed valid under 35 U.S.C. 282. This Patent was supported by an oath or declaration from each of the Inventors (Knight and Scallen), and was prosecuted by attorneys having Power of Attorney from Knight and Scallen.

U.S. Patents 5,578,313, 6,096,536, and all pending applications concerning the vitaletheine modulators, containing substituted, incorrect structures different from those taught in U.S. Patent 5,370,868, are invalid based upon 35 U.S.C. 132 which states in pertinent part:

"No amendment shall introduce new matter into the disclosure of the invention."

As Plaintiff has pointed out in the Pretrial Order (page 23), "if new matter is introduced during the prosecution of a patent application, claims depending on or incorporating such new matter are invalid under 35 U.S.C. 112,¶ 1. Waldmar Link, GmbH & Co. v. Osteonics Corp., 32 F.2d 556, 558, 31 U.S.P.Q.2d 1855 (Fed. Cir. 1994); Transco Prod., Inc. v. Performance Contracting, Inc., 38 F.3d 551, 558, 32 U.S.P.Q.2d 1077 (Fed. Cir. 1994); Texas Instr., Inc. v. Int'l Trade Comm'n,, 871 F.2d 1054, 1065, 10 U.S.P.Q.2d 1257 (Fed. Cir. 1989); In re Rasmussen, 650 F.2d 1212, 211 U.S.P.Q. 323 (C.C.P.A. 1981); SDS USA, Inc. v. Ken Specialties, Inc., 122 F.Supp.2d 533, 544 (D.N.J. 2000)."

37 CFR 1.67(c) states in pertinent part:

"A supplemental oath or declaration meeting the requirements of 1.63 must also be filed if the application was altered after the oath or declaration was signed ... ."

It is uncontested that the *only* Inventor Oath or Declaration in each of the above referenced Patents and Patent Applications was signed in 1992, *prior* to the introduction of the amendments introducing substituted incorrect structures (new matter) in 1995-1996. Thus, a supplemental oath or declaration was mandatory under 37 CFR 1.67(c), but was neither sought nor obtained by UNM from Knight and Scallen.

Patent or application altered after signing by Inventors by adding to specification and adding three claims is invalid as violating patent office rules of practice. Carter-Wallace, Inc. v. United States (1974)

204 Ct Cl 341, 496 F.2d 535, 182 USPQ 172. Therefore, U.S. Patents 5,578,313, 6,096,536, and all amended vitaletheine modulator applications are *invalid*, due to changes in the specification and claims. This invalidity is true for **any** changes inserted by UNM subsequent to the Inventor Oath or Declaration signed in 1992, and *does not require the addition of new matter*. UNM simply failed to observe the requirements for a Supplemental Declaration under 37 CFR 1.67(c) and, therefore, UNM failed to conform to Patent Laws and Regulations.

It is impossible for *both* U.S. Patent 5,370,868 and 5,578,313 to be valid, since they contain the same experimental data purportedly showing the same biological activity for two distinct and structurally very different sets of compounds. Only the patent claiming the compounds which were actually used in these experiments can be valid. That patent is U.S. Patent 5,370,868.

There can be **no basis** for the *presumption of correctness* for the *substituted* structures, proposed by others, who i) were not Inventors, ii) who changed the method of synthesis, and iii) who did not even attempt to evaluate and/or compare the biological activities of the compounds (sulfonates, taurines) which they synthesized with the biological activities obtained for the authentic vitaletheine modulators used by Knight and Scallen in all of their experiments.

## 2. Unlawful Patent Prosecution Invalidates Patents.

The invalidity of U.S. Patents 5,578,313, 6,096,536, and other applications containing the substituted structures is further supported by the illicit nature of the prosecution of these patents and patent applications. Knight and Scallen are the Inventors (Applicants) and also the owners of the 1992 CIP applications and their progeny, since UNM had neither sought nor obtained assignments *prior* to the insertion of amendments changing the structures of the vitaletheine modulators in 1995-96.

USPTO MPEP 306 states in pertinent part:

> "Substitute or continuation-in-part applications require a new assignment if they are to be issued to an assignee."

7

At the time of the insertion of the amendments into the CIP Applications, changing the structures of the vitaletheine modulators and introducing new matter, Knight and Scallen were the Applicants (owners) of these CIP applications, since assignments had neither been sought nor obtained by UNM. Since UNM was not the assignee, UNM and its agents had no legal authority to purse patent prosecution independent of the Inventors (37 CFR 3.73). Further, from the Fall of 1994, the attorneys handling the patent prosecution had no Power of Attorney from Knight and Scallen, the Inventors (Applicants and owners) of the 1992 CIP Applications.

Therefore, the amendments in question and the resulting amended Patents and Applications are invalid, due to lack of legal authority of UNM and its agents to prosecute the 1992 CIP Applications in any form whatsoever, subsequent to the Fall of 1994 when the attorneys authorized by the Inventors were terminated by UNM and the licensee.

USPTO acceptance of the substituted structures was *improperly influenced* by **a)** the failure of the University to inform the Inventors, Knight and Scallen, of the substitutions (amendments) prior to submission (i.e., the University *concealed* this from Knight and Scallen), **b)** the failure by UNM to seek Supplemental Declarations, **c)** the use by UNM of out-dated (1992) Inventor Declarations, and **d)** the false statements made by UNM and/or its agents to the patent examiner claiming inventor approval of the amendments changing the structures of the vitaletheine modulators —all of which **deceived** the patent examiners into believing that the Inventors approved the amendments. For example, the **only** Inventor Declarations included in the file-wrappers for U.S. Patents 5,578,313 and 6,096,536 were those signed in 1992, three to four years **prior** to the submission of the amendments

The United States Patent and Trademark Office (USPTO) was further *deceived* with regard to the authority of those submitting the amendments by the false claim of ownership submitted by the University patent administrator in May of 1996, who knew or should have known that Assignments of the 1992 CIP Applications had neither been sought nor obtained from the Inventors, Knight and Scallen.

8

The above actions and omissions by the University combined to **deceive** the USPTO into accepting the amendments and issuing US Patents 5,578,313 and 6,096,536, and accepting amendment of U.S. Patent Applications No.08/463,784, 08/466,143 and 08/469,697. A decision by the United States Patent and Trademark Office concerning these amendments is **not** presumptively correct, nor is the issuance of patents presumptively correct, when based upon invalid, incorrect and deceptive documents, and false representations concerning the Inventors' position on these amendments.

Clearly, the University and its agents have violated 18 U.S.C. 1001.

Under these circumstances a determination by the Patent and Trademark Office that an amendment does not introduce "new matter" as defined in 35 U.S.C. 132 is **not** entitled to "an especially weighty presumption of correctness." Brooktree Corporation v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1574-75 (Fed Cir. 1993).

A party that does not have clear ownership cannot pursue patent prosecution without Power of Attorney and prior approval by the Inventors for all amendments, changes in specifications, or changes in claims. UNM is such a party. Therefore, all Patents and Applications containing the false structures must be reissued or corrected to restore the authentic vitaletheine modulator structures.

B. **Ownership**

In Count I of the Complaint Plaintiff seeks a declaration of ownership for all of the Vitaletheine Modulator Patents and Patent Applications. This Count is based upon the claim of initial ownership in the 1983 University Patent Policy.

Section 2 of the 1983 UNM Patent Policy states:

"..., such inventions or discoveries belong to the University".

That this claim of ownership is actually a claim of *initial* ownership is made clear in section 5a of that Policy:

> "In the case of any invention or discovery which *initially* belongs to the University under the provisions of section 2 above, ... ". [Emphasis supplied.]

If the University did own the Knight and Scallen Inventions by its claim of *initial* ownership, assignments would not have been necessary at any time, the warranties of ownership in 1994 and 1996 would have been valid, and the suit in 1999 would be unnecessary, frivolous, moot, and actionable under Rule 11 of Fed. R. Civ. P. Further, if the claim of initial ownership by UNM in the 1983 Patent Policy is valid, the 1991 Assignments are null and void since one cannot assign/sell what one does not own.

If the claim of *initial* ownership in the 1983 Patent Policy is **not** valid (see below) and since there is no requirement for assignment or any other transfer language in the Patent Policy, the Inventors have never been under any obligation to assign their ownership.

Evidence for the invalidity of this claim of *initial ownership* by UNM in its 1983 Patent Policy is found in 35 U.S.C. 111, 261, and in Dubilier and its progeny. See below and *Docs.* 111 and 146.

**Inventors** are the **initial owners** of their Inventions.

Ms. Quintana, UNM patent administrator agrees; she states (Quintana Declaration, ¶ 5, *Doc.* 70):

> "The inherent presumption raised by these two sections (111 and 261) is that inventors own the inventions they create, unless they are otherwise contractually required to relinquish their rights to their employer or some other party." [Emphasis supplied.]

The 1983 University Patent Policy contains no provisions requiring Inventors to *relinquish* their rights or to assign their Inventions. Even special master Regan agrees (*Doc.* 205, page 21, B.):

> "The 1983 Patent Policy does not expressly state that Defendants would 'assign' inventions to the University."

If an employee is not hired to invent and there is no contractual obligation to assign, then employee inventions belong to the Inventor. United States v. Dubilier Condenser Corp. (1933) 289 US 178, 77 L Ed 1114, 53 S. Ct. 554, 85 ALR 1488; U.S. Colloid Mill Corp. v. Myers (1934, DC NY) 6F Supp 283; American Cyanamid Co. v. Hubbell (1935), (CA3 NJ) 76 F2d 807, 25 USPQ 27; National

10

Development Co. v. Regan (1956) 2 Misc 2d 455, 153 NYS2d 348, 157 NE2d 505; Photometric Products Corp. v. Radtke (DC NY) 104 USPQ 4; and Hewett v. Samsonite Corp. (1973) 32 Colo App 150, 507 P2d 1119.

Knight and Scallen were neither hired to invent nor were they under any contractual obligation to assign. See Scallen Third Declaration, ¶¶ 1-8, *Doc.* 146.

In addition Universal Sales Corp. v. California Press Mfg. Co. (1942) 20 Cal 2d 751, 128 P.2d 665, 55 USPQ 107 demonstrates that **corporations cannot be the initial owners of Inventions**. The University is a *"body corporate"* under New Mexico law (21-7-4, NMSA 1978). Therefore, UNM's claim of *initial* ownership in the 1983 Patent Policy (sections 2 and 5a) is *invalid* and is, therefore, *not contractually binding on the Inventors*, Knight and Scallen. An invalid provision of a contract is not enforceable.

Knight has pointed out (*Doc.* 233, ¶¶ 6-16) that the 1983 Patent Policy claim of *initial* ownership *misrepresents* both Federal Patent Law (35 U.S.C. 111 and 261) and applicable case law, as referred to above. Therefore, because of this *misrepresentation* by UNM in the 1983 Patent Policy, the Inventors were placed in an *inequitable* position when asked or ordered to assign their Inventions to the University. [see Scallen Fourth Declaration, ¶ 7, *Doc.* 155]. This fact alone *invalidates* the five 1991 Assignments.

Regardless of the validity or invalidity of the claim of initial ownership in the 1983 Patent Policy and regardless of the validity or invalidity of the 1991 assignments, the warranty of ownership in the 1994 License Agreement by UNM and the claim of "full right title and interest" made by UNM's patent administrator (Ms. Quintana) to USPTO in May of 1996 are invalid. By USPTO definition (MPEP 201.08), CIP Applications include new, additional matter not included in the 1990 parent applications. The USPTO requires assignment of CIP applications if ownership is to be vested in anyone other than the Inventors, Knight and Scallen (MPEP 306).

11

The Inventors were never asked to assign the five 1992 CIP applications *prior* to UNM's giving false warranty of ownership on August 23, 1994. See Quintana [Second] Declaration, *Doc.* 54, ¶ 9, page 5.

Even if UNM claims that there is a contractual obligation to assign the 1992 CIPs, which there isn't, UNM should have asked for such assignment in 1992. Plaintiff admits that it did *not* request assignment at that time. See Quintana Declaration, *Doc.* 54, ¶ 9, page 5. UNM *knew, or should have known*, of this mistake. Accrual began in August/September of 1992. Accrual is **not** activated when one party discovers its mistake. City of Carlsbad v. Grace, 1998-NMCA-144, 126 N.M. 95, 966 P.2d 1178 (Ct. Ap. 1998).

If UNM considers failure to assign the 1992 CIPs to constitute a breach of contract, **Plaintiff should have asked for such assignments in 1992**, and should have filed suit against Knight and Scallen long before May of 1999, **almost seven years after** UNM claims it was entitled to assignment of the 1992 CIP applications. Therefore, any conceivable statute of limitations bars recovery by UNM for injunctive relief concerning Counts I, II, and IV. Therefore, such claims for injunctive relief, i.e., assignment, are futile.

Thus, Knight and Scallen are the owners of the three 1992 Vitaletheine Modulator Patents and Patent Applications and their progeny, including U.S. Patents 5,370,868, 5,578,313, and 6,096,536; and other pending Vitaletheine Modulator Patent Applications.

IV. **Summary**

1. Knight and Scallen are the only true and properly named inventors of the Vitaletheine Issued Patents (U.S. Patents 5,370,868, 5,578,313, and 6,096,536) and of any patents or applications deriving from the 1992 CIP applications, and containing much the same compounds and utilities.

2. U.S. Patents 5,578,313, 6,096,536, and all amended vitaletheine modulator applications are invalid based upon **either**:

 a) changes in the specification and claims inserted by UNM subsequent to the Inventor Oath or Declaration signed in 1992 by Knight and Scallen; or

 b) insertion of new matter into the specification by UNM; or

 c) unlawful patent prosecution by UNM without authorization from the Inventor (Applicant) owners, Knight and Scallen.

3. Knight and Scallen are the owners of:

 a) the Vitaletheine Issued Patents (U.S. Patents 5,370,868, 5,578,313, and 6,096,536);

 b) the three 1992 vitaletheine modulator CIP patent applications (07/941926, 07/010892, and 07/928725; and

 c) any patents or applications deriving therefrom and containing much the same compounds and utilities.

Based upon the above "Findings of Fact and Conclusions of Law" Scallen respectfully requests the Court to sign the attached Order.

Dated this 9th day of June, 2001.

Respectfully submitted,

By: _____

Terence J. Scallen, MD., Ph.D.
PO. Box 651
Borrego Springs, CA 92004-0651

Defendant/Counterplaintiff, *Pro Se*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent by US mail on June 9, 2001 to:

Paul Adams
PO. Box 26927
Albuquerque, NM 87125-6927

Sean Olivas
PO. Drawer AA
Albuquerque, NM 87103

Galen D. Knight
3205 Arizona NE
Albuquerque, NM 87110

*Terence J. Scallen*

Terence J. Scallen

Assignment Serial Number Information

 **PALM INTRANET**

Day : Thursday
Date: 5/31/2001
Time: 14:13:59

# Assignment Serial Number Information for 07/941926

| | |
|---|---|
| Total Assignments : 1 | |
| Serial Number : **07/941926** | Patent Number : |
| Filling Date : **09/08/1992** | Issue Date : **00/00/0000** |
| Related Patent Numbers: | |
| Title : **VITALETHEINE AND USE IN CELL CULTURES** | |
| Applicant(s) : **KNIGHT, GALEN D.** ‖ **SCALLEN, TERENCE J.** | |
| Reel/Frame(s) : **009054/0335** | |

**#1. Reel/Frame # 009054/0335**

**Reel : 009054  Frame : 0335**  Mailroom Date : 03/30/1998   New App Fil Rcpt Date : 00/00/0000
Assignments Date : 04/06/1998  Date Mailed : 06/13/1998
Date Recorded : 03/30/1998                                    Number of Pages : 0

| Assignor | Exc Date | Assignee : | Return Address : |
|---|---|---|---|
| NEW MEXICO, UNIVERSITY OF | 01/29/1998 | NATIONAL INSTITUTES OF HEALTH, THE<br>6701 ROCKLEDGE DRIVE, ROOM 3188 MSC 7750<br>EXTRAMURAL INVENTIONS OFFICE, THE<br>BETHESDA MARYLAND 20892-7750 | THE NATIONAL INSTITUTES OF HEALTH<br>BELEN AWETAHEGNE<br>THE EXTRAMURAL INVENTIONS OFFICE<br>6701 ROCKLEDGE DR., ROOM 3188, MSC 7750<br>BETHESDA, MD 20892-7750 |

**Brief :**
Invalid Brief Code - 39

Search Completed: No More Records to Display.

## Search Another:

Serial# [_____]    or Patent# [_____]    or Reel/Frame# [____][__]
[ Search ]          [ Search ]             [ Search ]

(To Go BACK Use BACK Button on Your BROWSER Tool Bar)

Back to ‖ ASSIGNMENT ‖ PALM ‖ OASIS ‖ Home Page

Exhibit 1

1 of 1                                           5/31/01 2:13 PM

 **PALM INTRANET**

Day : Thursday
Date: 5/31/2001
Time: 14:14:22

# Assignment Serial Number Information for 07/910892

| Total Assignments : 1 |
|---|

| Serial Number : **07/910892** | Patent Number : |
|---|---|
| Filing Date : **07/10/1992** | Issue Date : **00/00/0000** |

Related Patent Numbers:

Title : **USE OF VITALETHEINE MODULATORS IN THE PROPHYLAXIS AND TREATMENT OF DISEASE**

Applicant(s) : **KNIGHT, GALEN D. || SCALLEN, TERENCE J.**

Reel/Frame(s) : **009054/0335**

## #1. Reel/Frame # 009054/0335

**Reel : 009054   Frame : 0335**   Mailroom Date : 03/30/1998   New App Fil Rcpt Date : 00/00/0000
Assignments Date : 04/06/1998 Date Mailed : 06/13/1998
Date Recorded : 03/30/1998                                              Number of Pages : 0

| Assignor | Exc Date | Assignee : | Return Address : |
|---|---|---|---|
| NEW MEXICO, UNIVERSITY OF | 01/29/1998 | NATIONAL INSTITUTES OF HEALTH, THE<br>6701 ROCKLEDGE DRIVE, ROOM 3188 MSC 7750<br>EXTRAMURAL INVENTIONS OFFICE, THE<br>BETHESDA MARYLAND 20892-7750 | THE NATIONAL INSTITUTES OF HEALTH<br>BELEN AWETAHEGNE<br>THE EXTRAMURAL INVENTIONS OFFICE<br>6701 ROCKLEDGE DR., ROOM 3188, MSC 7750<br>BETHESDA, MD 20892-7750 |

**Brief :**
Invalid Brief Code - 39

Search Completed: No More Records to Display.

## Search Another:

Serial# [         ]    or Patent# [         ]    or Reel/Frame# [     ] [     ]
[ Search ]             [ Search ]                [ Search ]

(To Go BACK Use BACK Button on Your BROWSER Tool Bar)

Back to || ASSIGNMENT || PALM || OASIS || Home Page

 **PALM INTRANET**

Day : Thursday
Date: 5/31/2001
Time: 14:14:37

# Assignment Serial Number Information for 07/928725

| Total Assignments : 1 | |
|---|---|
| Serial Number : **07/928725** | Patent Number : **5370868** |
| Filing Date : **08/13/1992** | Issue Date : **12/06/1994** |
| Related Patent Numbers: **5578313** | |
| Title : THERAPEUTIC USE OF VITALETHEINE MODULATORS IN NEOPLASIA | |
| Applicant(s) : **KNIGHT, GALEN D.** ‖ **SCALLEN, TERENCE J.** | |
| Reel/Frame(s) : **009054/0335** | |

## #1. Reel/Frame # 009054/0335

**Reel : 009054   Frame : 0335**   Mailroom Date : 03/30/1998   New App Fil Rcpt Date : 00/00/0000
Assignments Date : 04/06/1998 Date Mailed : 06/13/1998
Date Recorded : 03/30/1998                                     Number of Pages : 0

| Assignor | Exc Date | Assignee : | Return Address : |
|---|---|---|---|
| NEW MEXICO, UNIVERSITY OF | 01/29/1998 | NATIONAL INSTITUTES OF HEALTH, THE<br>6701 ROCKLEDGE DRIVE, ROOM 3188 MSC 7750<br>EXTRAMURAL INVENTIONS OFFICE, THE<br>BETHESDA MARYLAND 20892-7750 | THE NATIONAL INSTITUTES OF HEALTH<br>BELEN AWETAHEGNE<br>THE EXTRAMURAL INVENTIONS OFFICE<br>6701 ROCKLEDGE DR., ROOM 3188, MSC 7750<br>BETHESDA, MD 20892-7750 |

**Brief :**
Invalid Brief Code - 39

Search Completed: No More Records to Display.

**Search Another:**

Serial# [        ]   or Patent# [        ]   or Reel/Frame# [        ]  [        ]
[ Search ]         [ Search ]              [ Search ]

(To Go BACK Use BACK Button on Your BROWSER Tool Bar)

Back to ‖ ASSIGNMENT ‖ PALM ‖ OASIS ‖ Home Page



# PALM INTRANET

Day : Thursday
Date: 5/31/2001
Time: 14:14:52

# Assignment Serial Number Information for 07/919253

| Total Assignments : 1 | |
|---|---|
| Serial Number : **07/919253** | Patent Number : |
| Filling Date : **07/27/1992** | Issue Date : **00/00/0000** |
| Related Patent Numbers: | |
| Title : **BETA-ALETHINE USE IN CELL CULTURE AND THERAPY** | |
| Applicant(s) : **KNIGHT, GALEN D.** \|\| **MANN, PAUL L.** \|\| **SCALLEN, TERENCE J.** | |
| Reel/Frame(s) : **009054/0335** | |

### #1. Reel/Frame # 009054/0335

**Reel : 009054  Frame : 0335**  Mailroom Date : 03/30/1998   New App Fil Rcpt Date : 00/00/0000
Assignments Date : 04/06/1998  Date Mailed : 06/13/1998
Date Recorded : 03/30/1998                                   Number of Pages : 0

| Assignor | Exc Date | Assignee : | Return Address : |
|---|---|---|---|
| NEW MEXICO, UNIVERSITY OF | 01/29/1998 | NATIONAL INSTITUTES OF HEALTH, THE<br>6701 ROCKLEDGE DRIVE, ROOM 3188 MSC 7750<br>EXTRAMURAL INVENTIONS OFFICE, THE<br>BETHESDA MARYLAND 20892-7750 | THE NATIONAL INSTITUTES OF HEALTH<br>BELEN AWETAHEGNE<br>THE EXTRAMURAL INVENTIONS OFFICE<br>6701 ROCKLEDGE DR., ROOM 3188, MSC 7750<br>BETHESDA, MD 20892-7750 |

**Brief :**
Invalid Brief Code - 39

Search Completed: No More Records to Display.

**Search Another:**

Serial# [ ]          or Patent# [ ]          or Reel/Frame# [ ] [ ]
[ Search ]            [ Search ]               [ Search ]

(To Go BACK Use BACK Button on Your BROWSER Tool Bar)

Back to \|\| ASSIGNMENT \|\| PALM \|\| OASIS \|\| Home Page

 **PALM INTRANET**

Day : Thursday
Date: 5/31/2001
Time: 14:15:13

# Assignment Serial Number Information for 07/924977

| Total Assignments : 1 |
|---|

| Serial Number : **07/924977** | Patent Number : |
|---|---|
| Filing Date : **08/05/1992** | Issue Date : **00/00/0000** |

Related Patent Numbers: **5643966**
Title : **BETA-ALETHINE AS ANTI-TUMOR AGENT**
Applicant(s) : **KNIGHT, GALEN D.** || **MANN, PAUL L.** || **SCALLEN, TERRANCE J.**
Reel/Frame(s) : **009054/0335**

### #1. Reel/Frame # **009054/0335**

**Reel : 009054   Frame : 0335**   Mailroom Date : 03/30/1998   New App Fil Rcpt Date : 00/00/0000
Assignments Date : 04/06/1998   Date Mailed : 06/13/1998
Date Recorded : 03/30/1998                                Number of Pages : 0

| Assignor | Exc Date | Assignee : | Return Address : |
|---|---|---|---|
| NEW MEXICO, UNIVERSITY OF | 01/29/1998 | NATIONAL INSTITUTES OF HEALTH, THE<br>6701 ROCKLEDGE DRIVE, ROOM 3188 MSC 7750<br>EXTRAMURAL INVENTIONS OFFICE,THE<br>BETHESDA MARYLAND 20892-7750 | THE NATIONAL INSTITUTES OF HEALTH<br>BELEN AWETAHEGNE<br>THE EXTRAMURAL INVENTIONS OFFICE<br>6701 ROCKLEDGE DR., ROOM 3188, MSC 7750<br>BETHESDA, MD 20892-7750 |

**Brief :**
Invalid Brief Code - 39

Search Completed: No More Records to Display.

## Search Another:

Serial# [    ]        or Patent# [    ]        or Reel/Frame# [    ] [    ]
[ Search ]           [ Search ]                [ Search ]

(To Go BACK Use BACK Button on Your BROWSER Tool Bar)

Back to || ASSIGNMENT || PALM || OASIS || Home Page