IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO



01 JUL 24 PM 3: 44

THE REGENTS OF THE UNIVERSITY
OF NEW MEXICO

    Plaintiff,

vs.                                        Cause No. CIV 99-577 JC/WWD

GALEN D. KNIGHT, an individual;
and TERENCE J. SCALLEN, an individual;

    Defendants.

### DEFENDANT KNIGHT' SECOND AMENDED
### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Defendant, Galen D. Knight, Ph.D. hereby submits a second amended proposed Findings of Fact and Conclusions of Law for consideration by the Court in connection with the trial which commenced on June 25, 2001.

**Findings of Fact**

1. The Plaintiff University of New Mexico (hereinafter "UNM") is a body corporate established under the Constitution and Laws of the State of New Mexico (21-7-4, NMSA 1978).

2. Defendant Galen D. Knight, Ph.D. ("Knight") is a resident of the State of New Mexico, and Defendant Terence J. Scallen, MD., Ph.D. ("Scallen") is a resident of the State of California.

3. This matter was tried on the issues of a) whether or not new matter was added to the Vitaletheine Patents and Patent Applications in contravention of 35 U.S.C. 132; b) ownership of the vitaletheine Patents and Patent Applications of Count I of the amended



1

Complaint (*Doc.* 246); and c) Inventorship of the Vitaletheine Patents and Patent Applications (Count III) of the amended Complaint.

4.      The Court has entered summary judgment in favor of the Plaintiff on Count II of the Complaint, holding that UNM is the owner of all right, title, and interest to the Beta-Alethine Patents and Applications (as defined in the Amended Complaint). The Court has also entered summary judgment on Count IV, holding that Knight and Scallen breached their contractual obligations with UNM by failing to execute assignments to the Vitaletheine Patents and Applications (as defined in the Amended Complaint). The Court has also entered summary judgment that the Defendants are the only joint, and properly named inventors of one of the Vitaletheine Issued Patents, U.S. Patent No. 5,370,868 (Count III).

5.      The Court has dismissed Counts V, VI, and VII of the Amended Complaint.

6.      Count III of the Amended Complaint arises under 35 U.S.C. 256 and 28 U.S.C. 2201.

7.      The allegations of Counts I and III raise and allege issues that arise under the Patent Laws (35 U.S.C. 1 *et seq.*).

8.      The patent application (Serial No. 07/928,725) that matured into United States Patent No. 5,370,868 (the "868 Patent") entitled "Therapeutic Use of Vitaletheine Modulator in Neoplasia", was filed on August 13, 1992 as a continuation-in-part of Application Serial No. 07/549,440, filed on July 6, 1990. The '868 Patent issued on December 6, 1994, with Drs. Knight and Scallen as listed inventors. Both Knight and Scallen signed a declaration of Inventorship that they were the joint inventors of the subject matter claimed in Application Serial No. 07/928,725.

9. The patent application (Serial No. 08/317,548) that matured into United States Patent No. 5,578,313 (the "313 Patent") entitled "Therapeutic Uses of Vitaletheine Modulators in Neoplasia" was filed on October 4, 1994 as a divisional application of Application Serial No. 07/928,725 filed on August 13, 1992, which is a continuation-in-part of Application Serial No. 07/549,440 filed July 6, 1990. The '313 Patent issued on November 26, 1996, with Knight and Scallen as listed inventors. Both Knight and Scallen signed a declaration of Inventorship that they were the joint inventors of the subject matter claimed in Application Serial No. 07/928,725.

10. The patent application (Serial No. 08/463,732) that matured into United States Patent No. 6,096,536 (the "536 Patent") entitled "In Vitro Cell Culture in Media Containing Beta-Alanyl-Taurine or Carbobenzoxy Beta-Alanyl-Taurine" was filed on June 5, 1995 as a divisional application of United States Application Serial No. 08/321,010 filed October 6, 1994, which is a divisional application of United States Application Serial No. 07/941,926 filed September 8, 1992, which is a continuation-in-part of United States Application Serial No. 07/549,438 filed July 06, 1990. The '536 Patent issued on August 1, 2000, with Knight1and Scallen listed as inventors. Both Knight and Scallen signed a declaration of Inventorship that they were joint inventors of the subject matter claimed in Application Serial No. 07/941,926.

11. United States Patent Application Serial No. 08/463,784 (the "784 Application", now entitled "In Vitro Cell Culture in Media Containing Beta-Alanyl-Taurine or Carbobenzoxy Beta-Alanyl-Taurine" was filed on June 5, 1995 as a divisional application of United States Application Serial No. 08/321,010 filed October 6, 1994, which is a divisional application of United States Application Serial No. 07/941,926 filed September

8, 1992, which is a continuation-in-part of United States Application Serial No. 07/549,438 filed July 06, 1990, with Knight and Scallen listed as inventors and is pending before the United States Patent and Trademark Office ("USPTO"). Both Knight and Scallen signed a declaration of Inventorship as to Application Serial No. 07/941,926.

12. United States Application Serial No. O8/466,143 (the "143 Application") entitled " Use of Vitaletheine Modulators in the Prophylaxis and Treatment of Disease" was filed on June 6, 1995 as a continuation of Application Serial No. 07/910,892 filed July 10, 1992, which is a continuation-in-part of Application Serial No. 07/549,105, with Knight and Scallen listed as inventors, and is pending before the USPTO. Both Knight and Scallen signed a declaration of Inventorship as to United States Application No. 07/910,892.

13. United States Patent Application Serial No. 08/469,697 (the "697 Application"), entitled "Use of Vitaletheine Modulators in the Prophylaxis and Treatment of Disease" was filed on June 6, 1995 as a continuation of Application Serial No. 07/910,892 filed July 10, 1992, which is a continuation-in-part of Application Serial No. 07/549,105 filed July 7, 1990, with Knight and Scallen listed as inventors, and is pending before the USPTO. Both Knight and Scallen signed a declaration of inventorship as to United States Application No. 07/910,892.

14. United States Patent Application Serial No. 08/464,943 (the "943 Application"), entitled "Therapeutic Uses of Vitaletheine Modulators in Neoplasia" was filed on June 5, 1995 as a divisional application of Application Serial No. 07/928,725 filed on August 13, 1992, which is a continuation-in-part of Application Serial No. 07/549,440 filed July 6, 1990, with Knight and Scallen listed as inventors, and is pending before the USPTO.

Both Knight and Scallen signed a declaration of Inventorship that they were the joint inventors of the subject matter claimed in Application Serial No. 07/928,725.

15. United States Patent Application Serial No. 09/432,974 (the "974 Application"), entitled "Therapeutic Use of Vitaletheine Modulators in Neoplasia" was filed on July 10, 1998, presumably with both Knight and Scallen listed as inventors, and is pending before the USPTO. UNM and its licensee apparently have concealed patent prosecution on this application from Drs. Knight and Scallen and the Court, so its lineage and whether or not it has been amended is unclear. This application was showing tentative approval for general licensing as of February 1, 2000.

16. In the '313 Patent ('548 Application), the '536 Patent ('732 Application), the '784 Application, the '143 Application, the '697 Application, and presumably the '943 and '974 Applications UNM has made or probably has made certain amendments to the molecular structure of certain compounds disclosed and claimed in the specifications thereof. These amendments were made subsequent to the filing of the application for each of the foregoing patents and applications. (The amendments made to the molecular structure of the compounds in each application, are, with respect to the change of the chemical structure, each referred to as the "Amendment". The '313 Patent, the '536 Patent, the '784 Application, the '143 Application, the '697 Application, and the '943 and '974 Applications are collectively, referred to herein as the "Patents and Applications".)

17. Additional changes in the '143 and '697 Application are particularly grievous in that the NS-1 "Myeloma" study, "myeloma" being a cancer of the B-cell progenitors in the immune system, is falsely identified as a "Melanoma" study, "melanoma" being a

particularly intractable skin cancer and distinctly different from "myeloma". This mislabeling of the cancer studies occurs in the legends for Figs. 2A and B for the myeloma data (Plntfs. Exhs. 6 and 7, ##1133 and 012, respectively) with most of the available melanoma data, such as that found on the web site (Defs. Exh. 10C), http://www.VitaleTherapeutics.org and in the Cancer Research articles published November 1, 1994 (Defs. Exh. 1I), being omitted from these patent applications.

18. Various United States, Canadian, World and International Patent applications also have been filed using these original discoveries, patents, and applications as bases. For example, the Canadian application is based upon the International Application PCT/US91/04726, which in turn derives from United States Application Serial No. 07/941,926 filed September 8, 1992 as continuation-in-part of Application Serial No. 07/549,438 filed July 6, 1990; from United States Application Serial No. 07/901,892 (sic., 07/910,892) filed July 10, 1992 as a continuation-in-part of Application Serial No. 07/549,105 filed July 6, 1990; and from United States Application Serial No. 07/928,725 filed August 13, 1992 as a continuation-in-part of Application Serial No. 07/549,440 filed July 6, 1990. This application issued published January 22, 1993, and issued January 11, 1994 as CA 2,087,884 entitled "Vitalethine and Use in Cell Culture and Therapy" is thought to be fairly accurate (without amendment and having the correct structures in it, such as the sulfenate-linked benzyl carbamate dimer in Figure 24).

WO 92/000955 publishing from PCT/USSSS91/04726 on January 23, 1992, and based upon United States Patent Applications Serial Nos. 07/549,438, 07/549,105, and 07/549,440 all filed July 6, 1990, appears to contain mostly accurate information, albeit lacking corrections for improperly locked NMR spectra and **NOT** containing data and

other information found in the 1992 continuation-in-part applications. Patents issuing after about 1995 may have been erroneously Amended or may have had the most potent compounds removed from the applications, as at least some of the European applications have been, such as EP0539525B1 entitled "Vitaletheine and Use in Cell Culture and Therapy".

Drs. Knight and Scallen signed assignments for the 1990 patent applications and declarations for the 1992 continuations-in-part prior to the Amendment to the Patents and Applications.

19. The Amendment to the Patents and Applications incorrectly deleted authentic certain vitaletheine modulator structures from the claims.

20. The Amendment to the Patents and Applications relates to a compound correctly named in the Patents and Applications and filed as vitaletheine $V_4$. In the Amendment in most, if not all, of the Patents and Applications, the structure of vitaletheine $V_4$ was incorrectly changed to beta-alanyl-taurine (the "beta-alanyl-taurine Amendment").

21. The Amendment to the Patents and Applications also relates to a compound correctly named in the Patents and Applications as the "benzyl derivative of vitaletheine". The Amendment in most, if not all, of the Patents Applications incorrectly changed the molecular structure for the benzyl derivative of vitaletheine to carbobenzoxy beta-alanyl-taurine (the "carbobenzoxy beta-alanyl-taurine Amendment").

22. In the '313 Patent, the beta-alanyl-taurine Amendment and the carbobenzoxy beta-alanyl-taurine Amendment were accepted by the USPTO in both the specification and the claims following an initial rejection based on new matter.

23. In the '536 Patent, the beta-alanyl-taurine Amendment and the carbobenzoxy

beta-alanyl-taurine Amendment were accepted by the USPTO in both the specification and the claims following an initial rejection based on new matter.

24. In the '784 Application, which has not yet issued as a patent, the beta-alanyl-taurine Amendment and the carbobenzoxy beta-alanyl-taurine Amendment were accepted by the USPTO in both the specification and the claims following an initial rejection based on new matter.

25. In the '143 Application, which has not yet issued as a patent, the beta-alanyl-taurine Amendment and the carbobenzoxy beta-alanyl-taurine Amendment were accepted by the USPTO in both the specification and the claims following an initial rejection based on new matter.

26. In the '697 Application, which has not yet issued as a patent, the beta-alanyl-taurine Amendment and the carbobenzoxy beta-alanyl-taurine Amendment were accepted by the USPTO in both the specification and the claims following an initial rejection based on new matter.

27. In the '943 Application, which has not yet issued as a patent, the beta-alanyl-taurine Amendment and the carbobenzoxy beta-alanyl-taurine Amendment may have been accepted by the USPTO in both the specification and the claims following an initial rejection based on new matter.

28. In the '974 Application, which has not yet issued as a patent, the beta-alanyl-taurine Amendment and the carbobenzoxy beta-alanyl-taurine Amendment may have been accepted by the USPTO in both the specification and the claims following an initial rejection based on new matter.

29. It was established at trial that the molecular structure disclosed in the beta-alanyl-

taurine Amendment is **NOT** implicit in and is not an inherent characteristic of the written disclosure and specification, as filed, of each of the Patents and Applications.

30. It was established at trial that the molecular structure disclosed in the carbobenzoxy beta-alanyl-taurine Amendment is **NOT** implicit in and is not an inherent characteristic of the written disclosure and specification, as filed, of each of the Patents and Applications.

31. The molecular structure disclosed in the beta-alanyl-taurine Amendment does **NOT** represent the true and correct compound resulting from the synthetic process for vitaletheine $V_4$, disclosed in the Patents and Applications as filed.

32. The molecular structure disclosed in the carbobenzoxy beta-alanyl-taurine Amendment does **NOT** represent the true and correct compound resulting from the synthetic process for the benzyl derivative of vitaletheine disclosed in the Patents and Applications as filed.

33. In the '313 Patent, the '536 Patent, the '784 Application, the '143 Application, '697 Application, and perhaps the '943 and '974 Applications protests were filed by defendant, Dr. Knight; the protests appear in the prosecution history file of most, if not all, Patents and Applications with the possible exceptions of the '143, '943, and '974 based upon copies of file wrappers provided or obtained.

34. No amendment was made to the specification of the application maturing into U.S. Patent No. 5,370,868 that altered the molecular structure of any compound disclosed in the application as filed.

35. Hauser Chemical Research, Inc. ("Hauser") associated with Dovetail Technologies, Inc. ("Dovetail"), the licensee of UNM, to synthesize certain compounds

including vitalethine, vitaletheine $V_4$, and the benzyl derivative of vitaletheine. It was established at trial that Hauser's synthetic attempts (Dr. Christopher Murray) differed significantly from the methods taught by Drs. Knight and Scallen in U.S. Patent 5,370,868 (the '868 Patent) and as also described in the Patents and Applications. The compounds obtained by Hauser, as a result of significant modifications of the Knight and Scallen synthetic methods were different than those disclosed by Knight and Scallen in the specifications and claims for the '868 Patent. Further, it was established at trial that the inability of Hauser to synthesize vitalethine was due to failure to follow precisely the synthetic methods described by Knight and Scallen in the '868 Patent.

36. Professional Analysis, Inc. ("PAI") was retained by UNM to synthesize vitalethine, the benzyl derivative of vitaletheine, and vitaletheine $V_4$. It was shown at trial that the compounds obtained by PAI (Dr. Shield Wallace), as a result of significant modifications of the Knight and Scallen synthetic methods, were different than those disclosed by Knight and Scallen in the specifications and claims for the '868 Patent. Further, it was established at trial that the inability of Dr. Wallace to synthesize vitalethine was due to a failure to follow precisely the synthetic methods described by Knight and Scallen in the '868 Patent.

37. At trial the Defendants, Knight and Scallen, proved by a preponderance of the evidence that the methods described for the synthesis of vitaletheine $V_4$, the benzyl derivative of vitaletheine, and vitalethine produce precisely these compounds as described in U.S. Patent 5,370,868. The Knight and Scallen methods of syntheses taught in the '868 Patent do not produce beta-alanyl-taurine or carbobenzoxy beta-alanyl-taurine.

38. Knight and Scallen presented convincing evidence at trial authenticating the existence, structure, and biological activity of vitalethine.

39. By a preponderance of the evidence, the facts at trial proved that the Examiners and USPTO were **NOT** correct in accepting the beta-alanyl-taurine Amendment and the carbobenzoxy beta-alanyl-taurine Amendment and that such Amendments, in fact, assigned a molecular structure that is **NOT** inherent in the compounds synthesized using the method described in the Patents and Applications.

40. No Amendment was made as to the molecular structure of any compound included in U.S. Patent 5,370,868.

41. At trial UNM clearly averred that it does not believe in the existence of vitalethine or in the authentic structures described in the '868 Patent for the other vitaletheine modulators, i.e., the benzyl derivative of vitaletheine and vitaletheine $V_4$ and therefore, the '868 Patent is subject to the requirements of the UNM 1983 Patent Policy, Section 5a, which states in pertinent part:

**5a.** ... "If the President decides that the University will not seek to exploit the invention or discovery for production of income the University shall promptly assign title thereto to the discoverer or inventor ...".

## Conclusions of Law

42. The Court has personal jurisdiction over the parties.

43. Venue is properly laid in the District of New Mexico pursuant to 28 U.S.C. 1391(b).

44. The rights of the Defendants, Drs. Knight and Scallen, to relief necessarily depend on resolution of one or more substantive questions of United States Patent Law.

45. The relief sought by the Defendants, Drs. Knight and Scallen, in Count III

11

pursuant to 35 U.S.C. 256 necessarily arises under United States Patent Law for which federal courts have exclusive jurisdiction.

46. This Court has subject matter jurisdiction over the claims now pending.

47. The last sentence of 35 U.S.C. 132 provides as follows: "No amendment shall introduce new matter into the disclosure of the invention."

48. Determination of whether an amendment introduces new matter "depends on the facts of the case: the nature of the disclosure, the state of the art, and the nature of the added matter." Brooktree Corporation v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1574 (Fed. Cir. 1993).

49. If new matter is introduced during prosecution of a patent application, then claims depending on or incorporating such new matter are invalid under 35 U.S.C. 112, ¶ 1. Waldmar Link, GmbH & Co. v. Osteonics Corp., 32 F.3d 551, 558 (Fed. Cir. 1004); SDS USA, Inc. v. Ken Specialties, Inc., 122 F.Supp.2d 533, 544 (D.N.J. 2000).

50. A patent is presumed valid. 35 U.S.C. 282.

51. Therefore, U.S. Patent 5,370,868, issued on December 6, 1994 is presumed valid.

52. The Amendments do, as a matter of law, introduce new matter into the Patents and applications in contravention of 35 U.S.C. 132.

53. The Defendants, Drs. Knight and Scallen, are the properly named and sole inventors of the Patents and Applications as Amended.

54. The Defendants, Drs. Knight and Scallen, are the only, joint and properly named inventors of the '868 Patent.

55. The Defendants, Drs. Knight and Scallen, are the only, joint and properly named inventors of the '313 Patent and the '536 Patent.

56. The Defendants, Drs. Knight and Scallen, are the only, joint and properly named inventors of the inventions disclosed in the '784 Application, the '143 Application, '697 Application, and the '943 and '974 Applications, all including without limitation the Amendments.

57. The Defendants, Drs. Knight and Scallen, are the only, joint and properly named inventors of the inventions derived from the original 1990 filings, including without limitations the 1992 continutations-in-part Applications and Patents and any continuations, continuations-in-part, divisionals of any patents or applications and any other domestic, international, or foreign counterparts, thereof.

58. At trial UNM clearly averred that it does not believe in the existence of vitalethine or in the structures described in U.S. Patent 5,370,868 for the other vitaletheine modulators, i.e., the benzyl derivative of vitaletheine and vitaletheine $V_4$. See Facts 32-34 above. Therefore, these compounds will not be "exploited for income" (UNM 1983 Patent Policy, Section 5a). Section 5a of the applicable UNM 1983 Patent Policy requires that UNM disclaim any ownership that it may have in U.S. Patent 5,370,868 and any other Patents or Applications which have not been amended to change the structures taught in the '868 Patent. Therefore, full right, title and interest in U.S. Patent 5, 370,868 properly vests to the Inventors, Drs. Knight and Scallen. This ownership must be confirmed by a quitclaim assignment from UNM to Drs. Knight and Scallen.

59. The Defendants, Drs. Knight and Scallen, are the true and lawful owner of all right, title and interest to U.S. Patent 5,370,868, as to which no amendment to the structure of any compound therein was made, and all other patent applications included within the Vitaletheine Patents and Applications as to which no amendment was made as

to the structure of any compound included therein.

60. The Patents and Applications, including the '313 Patent, the '536 Patent, the '784 Application, the '143 Application, the '697 Application, and possibly the '943 and '974 Applications, are invalid as amended, due to the introduction of new matter in the Amendment (35 U.S.C. 132).

61. The Defendants, Knight and Scallen, are the true and lawful owners of all right, title and interest to the Patents and Applications, including the '313 Patent, the '536 Patent, the '784 Application, the '143 Application, the '697 Application, and the '943 and '974 Applications together with any patent or application, foreign or domestic, that is a continuation-in-part, continuation, or divisional application of any of the foregoing and that is a continuation-in-part, continuation, or divisional application of a predecessor of any of the foregoing and any other domestic, international, or foreign counterparts, thereof, in conformity with the UNM 1983 Patent Policy, section 5a, which states in pertinent part:

> **5a.** ... "If the President decides that the University will not seek to exploit the invention or discovery for production of income the University shall promptly assign title thereto to the discoverer or inventor ...".

62. The Defendants, Knight and Scallen, are entitled to correction and reissue of the Patents and Applications, including the '313 Patent, the '536 Patent, the '784 Application, the '143 Application, the '697 Application, and the '943 and '974 Applications together with any patent or application that is a continuation-in-part, continuation, or divisional application of or based upon any of the foregoing and that is a continuation-in-part, continuation, or divisional application of a predecessor of any of the foregoing that were erroneously amended by the insertion of new matter and any other

14

domestic, international, or foreign counterparts, thereof.

63.     In Nebraska Engineering Corp. V. Shivvers, 557 F.2d 1257 (8th Cir. 07/14/1977) it was affirmed that even putting royalties in escrow constituted nonpayment of royalties.

> "As the Sixth Circuit has noted, payment of royalties to an escrow agent is "tantamount to nonpayment." PPG Industries, Inc. v. Westwood Chemical, Inc., supra at 705. Indeed, absent a showing of necessity, the escrowing of royalty payments [sic., has] been characterized as an unjustified, prejudgment seizure of a licensor's property to secure a licensee's potential recovery. Milton Roy Co. v. Bausch Lomb, Inc., 418 F. Supp. 975 (D.Del. 1976)."

In this case, UNM has seized portions of royalties due Knight and Scallen and given them to Drs. Wallace and Murray, and subsidized efforts to make Dr. Murray, et al. inventors instead of the the true inventors. Rates given to Drs. Wallace and Murray are 6 to 10 times Knight's former salaried rate when he worked for UNM without a contract.

64.     The Supreme Court in Eastern Enterprises v. Apfel, 118 S.Ct. 2131, 141 L.Ed.2d 451 (U.S. 06/25/1998) has made it clear that even if UNM could seize Knight's inventorship and his share of royalties due the true inventors, legally, which it can't, then compensation to the true inventors is still justified, as follows:

> The Court has made clear that, not only seizures through eminent domain, but also certain "takings" through regulation can require "compensation" under the Clause. See, e.g., Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1972) ("[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking"); Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992) (land use regulation that deprives owner of all economically beneficial use of property constitutes taking); Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987) (public easement across property may constitute taking). But these precedents concern the taking of interests in physical property.

Despite its pleadings to the Court UNM by its subterfuge and obfuscation seeks to deprive the true inventors of even their inventorship, as its subsidy of Taub, et al.'s

including Dr. Murray's false claims to inventorship indicates.

65. Furthermore, the Supreme Court in TXO Production Corp. v. Alliance Resources, 1993. SCT. 3938 http://www.versuslaw.com, 113 S. Ct. 2711, 125 L. Ed. 2d 366, 61 U.S.L.W. 4766 (6/25/1993) found that a large corporate entity cannot disparage respondents and abuse process to renegotiate assignments and royalty arrangements:

> "In a common-law slander of title action in West Virginia state court, respondents obtained a judgment against petitioner TXO Production Corp. for $19,000 in actual damages and $10 million in punitive damages. Acccepting respondent's version of disputed issues of fact, the record shows, inter alia, that TXO knew that respondent Alliance Resources Corp. had good title to the oil and gas development rights at issue; that TXO acted in bad faith by advancing a claim on those rights on the basis of a worthless quitclaim deed in an effort to renegotiate its royalty arrangement with Alliance; that the anticipated gross revenues from oil and gas development—and therefore the amount of royalties that TXO sought to renegotiate—were substantial; that TXO was a large, wealthy company; and that TXO had engaged in similar nefarious activities in other parts of the country. In affirming, the State Supreme Court of Appeals, among other things, rejected TXO's contention that the punitive damages award violated the Due Process Clause of the Fourteenth Amendment as interpreted in Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1,113 L.Ed. 2d 1, 111 S.Ct. 1032."

In this case UNM has falsely claimed failure and refusal to assign to change the nature of the assignments to preclude Drs. Knight and Scallen from reporting unlawful activities to the USPTO and other US Government and State Agencies as required by law.

66. In addition to citing the importance of the "Clean Hands Doctrine" in seeking equitable relief from the Court, Precision Instrument Manufacturing Co., ET, 324 U.S. 806. 65 S.Ct. 993, 89 L.Ed. 1381 (April 23, 1945) makes the following clear:

> 6. Where a suit in equity concerns the public interest as well as the private interest of the litigants, the clean-hands doctrine assumes greater significance; for if the equity court in such case properly applies the maxim to withhold its assistance, it not only prevents a wrongdoer from enjoying the fruits of his transgression but averts an injury to the public. P. 815.

> 9. Those who have applications pending in the Patent Office or who are parties to Patent Office proceedings have an uncompromising duty to report to it all facts concerning possible fraud or inequitableness underlying the applications in issue. Failure in this duty is not excused by reasonable doubts as to the sufficiency of the proof of the inequitable conduct nor by resort to independent legal advice. P.818

67. Drs. Knight and Scallen clearly had no alternative, but to report unlawful and unethical activities by UNM and/or its licensee. Otherwise, they would have been implicated in those unlawful activities. Nor should Drs. Knight and Scallen be made to suffer S.L.A.P.P. and be deprived of their inventorships by doing what they were legally obligated to do.

For the reasons of Fact and Law set forth herein Drs. Knight and Scallen Pray the Court grant judgment against UNM and in the Defendants' favor on the Counts now before the Court and to sign the attached Order, including any additional relief for Defendant's that the Court deems appropriate such as recoupment for time and effort in bringing this cause to a Just resolution, as in the Pro Se equivalent of attorney's fees.

Dated this 24th day of July, 2001.

Respectfully submitted,

*Galen D. Knight*
*Galen D. Knight*
Galen D. Knight, pHd
Defendant, *Pro Se*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading and attached was hand delivered this 24th day of July, 2001 to the following:

Stephen A. Slusher and Paul Adams (and) Sean Olivas
PEACOCK, MYERS & ADAMS
201 Third Street, NW, Suite 1340
Albuquerque, NM, 87125-6927
Telephone: (505) 998-1500
Fax: (505) 243-2542

201 Third Street, NW, 12th Floor
Albuquerque, NM 87103
Telephone: (505) 346-9140
Fax: (505) 346-1370

and e-mailed on July 24th, 2001 to:

Terence J. Scallen
P.O. Box 651
Borrego Springs, CA 92004-0651
Telephone: 760-767-3444
e-mail: **tscallen@uia.net**

_____

Galen D. Knight, pHd