IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THE REGENTS OF THE UNIVERSITY
OF NEW MEXICO,

      Plaintiff,

vs.                                                   No. CIV 99-577 JC/WDS

GALEN D. KNIGHT, an individual;
and TERENCE J. SCALLEN, an individual;

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the *University's Motion for Summary Judgment as to Counterclaims of Defendant and Counter-Plaintiff Knight*, filed November 19, 2003 (*Doc. 405*); the *University's Motion for Judgment on the Pleadings, or in the Alternative for Entry of Judgment, as to Counterclaims of Defendant and Counter-Plaintiff Scallen*, filed November 19, 2003 (*Doc. 408*); and *Motion by Defendant/Counter Plaintiff Scallen for a Declaration by the Court that the Five 1991 Inventor Assignments and Any and All Other Contracts and Agreements Between the Inventors (Knight and Scallen, Knight, Mann and Scallen) and the University of New Mexico Concerning Inventions, Patents and Patent Applications are Null and Void Due to Failure of Consideration; Recission* [sic] *(Cancellation) of All Such Contracts and Restitution (Return of Ownership) of All Knight and Scallen (Knight, Mann and Scallen) Inventions, Patents, and Patent Applications to the Inventors Thereof; Declaration of Terence J. Scallen, MD., PH.D., November 28, 2003,* filed December 1, 2003

(*Doc. 409*). Having reviewed the motions, memoranda and all relevant authorities, the Court being fully advised, finds the University's motions well-taken (Docs. 405 and 408), and they are, therefore, granted. The Court further finds Defendant Scallen's motion (Doc. 409) not well-taken, and it is, therefore, denied.

In *Knight's Response in Opposition to UNM's Motion (Doc.405) for Summary Judgment as to Counterclaims of Defendant and Counter-Plaintiff Knight and Request for Immediate Injunctive Relief*, filed Dec. 3, 2003 (*Doc. 415*), Defendant Knight requests immediate injunctive relief. The Court finds the request not well-taken and it is denied without comment.

**I.     Background**

As the parties are aware, the Federal Circuit Court of Appeals reversed this Court's dismissal of Defendant Knight's counterclaim for royalties. The court also vacated and remanded for further consideration the other counterclaims by Defendants Knight and Scallen. *Regents of University of New Mexico v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003), *rehearing and rehearing en banc denied* (April 3, 2003), *cert. denied,* 124 S.Ct.104, 2003 WL 21458246 (Oct. 6, 2003). After a round of briefings, this Court issued a Memorandum Opinion and Order dismissing Defendants' counterclaims with the exception of Knight's counterclaim for royalties. *Regents of University of New Mexico v. Knight,* Civ. No. 99-577 JC/WDS (June 18, 2003). The sole issue before this Court, as addressed by Plaintiff, is thus whether there is a material issue of fact regarding Defendant Knight's compulsory counterclaim for royalties.

**II.     Standard of Review**

A party is entitled to summary judgment on all or any part of a claim as to which there is

no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Id.* at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson,* 477 U.S. at 248, 256. To meet this burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. *Gross v. Burggraf*, 53 F.3d 1531, 1546 (10th Cir. 1995). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Id.* If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597.

### III. Discussion

#### a. 1983 Patent Policy and 1992 Agreement

Plaintiff asserts that it is not entitled to provide Knight royalties until the patents generate a net income for the University. As evidence, the University produces two documents, which it claims support its position. The first document is a 1983 Patent Policy. *Memorandum in Support of University's Motion for Summary Judgment as to Counterclaims of Defendant and Counter-Plaintiff Knight* (University's Memo), filed Nov. 19, 2003, Ex. D (*Doc. 406*). Plaintiff contends, and the Court agrees, that the policy sets out a payment schedule for royalties to inventors that clearly states that the royalties are based on the percentage of net income received by the University for the patents. *Id.*

The second document is a 1992 agreement between Defendants Knight and Scallen, Paul Mann, and the University. *Id.* at Ex. E. The University contends that the 1992 agreement further specifies and gives notice to Defendant Knight that he will not receive royalties until the patents generate a net income. Specifically, the 1992 agreement states:

> Whereas the Inventors recognize expenses incurred by the University of New Mexico are considerable in the preparation, translation, filing, and prosecution of the above patent applications, the Inventors, Knight, Mann, and Scallen, do hereby agree that royalties to the University of New Mexico and the Inventors generated by the above patent applications, or patents issuing on said applications, on any or all of the above inventions be applied first to defraying the costs of preparation, translation, filing, and prosecution of the above patent applications as can be readily documented by the University of New Mexico, until such a time that these expenses are reimbursed. Thereafter, disbursements of royalties from the above patent applications or patents issuing on said applications will resume to the Inventors and the University of New Mexico according to the two existing UNM-Coinventor Agreements dated 09/05/91 and 05/16/89.[1]

---

[1] The Court notes that the University did not provide either of the Coinventor Agreements mentioned in the 1992 agreement.

*Id.* As with the 1983 Patent Policy, the Court finds the 1992 agreement clearly enunciates the University's policy that no royalties will be paid to Knight until certain specified costs are defrayed.

### b. Net Income

The next question is whether the patents at issue have generated any net income necessitating payment to Knight. The term "net income" has a fluid meaning depending on the source from which it derives. For example, the court in *Kennecott Copper Corp. v. United States*, defined net income from mining revenue as "gross income less allowable deductions, including overhead and operating expenses, development costs properly charged to expenses, depreciation, taxes, losses sustained, etc.." 347 F.2d 275, 300 n.32 (Ct.Cl. 1965) (citation omitted). In another case involving child support, the Wyoming Supreme Court looked to its legislature for a definition of net income. *Ready v. Ready*, 76 P.3d 836 (Wyo. 2003). Under that definition, net income

> means income as defined in paragraph (ii) of this subsection less personal income taxes, social security deductions, cost of dependent health care coverage for all dependent children, actual payments being made under preexisting support orders for current support of other children, other court-ordered support obligations currently being paid and mandatory pension deductions.

*Id.* at 839-40 (*quoting* Wyo. Stat. Ann. § 20-2-303(a)). In one last example, Black's Law Dictionary defines net income as "[t]otal income from all sources minus deductions, exemptions, and other tax reductions." Black's Law Dictionary 767 (7th ed. 1999).

As these examples demonstrate, there is no set definition of net income. Yet, what is also apparent from the above examples is that net income is revenue remaining after certain expenses, deductions and other costs are subtracted. The question is thus, pursuant to the 1992 agreement

outlining the expenses payable prior to Knight receiving royalties, is there any net income to which Knight is entitled?

The University contends that prior to its licensee, Dovetail Technologies (Dovetail), assuming the prosecution of the patents at issue, it had spent over $200,000 on patent prosecution costs.[2] In support of its contention that there is no net income, the University asserts that Dovetail has only paid it approximately $22,400 in royalty payments, presumably due to the cloud over the University's title. *Reply Memorandum in Support of University's Motion for Summary Judgment as to Counterclaims of Defendant and Counter-Plaintiff Knight* (Reply), filed Dec. 18, 2003, at 2 (*Doc. 420*) (citing *Supplemental Declaration of Julie Weaks Gutierrez in Support of University's Motion for Summary Judgment*, attached as exhibit). Although the cloud has been lifted, the University asserts that it has been unable to obtain any further payments from Dovetail. *University's Memo*, at 7. In support, the University attaches the affidavit of Harold Pope, an attorney the University assigned to negotiate its license with Dovetail. Mr. Pope states that he has been unable to obtain any further payments from Dovetail concerning the patents at issue. *Id.* at Ex. B.

Knight does not directly respond to the University's assertion that, although it has expended over $200,000 in patent prosecution costs, it has only received approximately $22,400 in royalty payments from its licensee. Instead, Knight's Response contains multiple amorphous and illogical arguments that do not pertain to the issue of royalties. As such, the Court will not further discuss Knight's contentions and finds that the University has sufficiently pointed out the

---

[2]Under the 1992 agreement, patent prosecution is an expense to be paid prior to the distribution of royalties to either the University or to Defendant.

absence of evidence to support Knight's claim of royalties.

## IV. **Conclusion**

The University asserts that pursuant to its 1983 Patent Policy and the 1992 agreement between it and the inventors of the patents, including Defendant Knight, it only owes royalties to the inventors when the patents produce a net income, as defined in both documents. As evidence that it does not owe Knight royalties, the University produces various documents and affidavits supporting its contention that its expenditures far exceed any income yet derived from the patents. The Court finds that Knight has failed to set forth specific facts demonstrating a genuine issue for trial.

The Court also finds that Scallen's Motion for Declaration that Inventor Assignments and All Other Contracts are Null and Void (*Doc. 409*) is not well-taken and is denied without comment due to untimeliness.

Wherefore,

IT IS ORDERED that the *University's Motion for Summary Judgment as to Counterclaims of Defendant and Counter-Plaintiff Knigh*t, filed November 19, 2003 (*Doc. 405*) is GRANTED;

IT IS ORDERED that the *University's Motion for Judgment on the Pleadings, or in the Alternative for Entry of Judgment, as to Counterclaims of Defendant and Counter-Plaintiff Scallen*, filed November 19, 2003 (*Doc. 408*) is GRANTED;

IT IS ORDERED that the *Motion by Defendant/Counter Plaintiff Scallen for a Declaration by the Court that the Five 1991 Inventor Assignments and Any and All Other Contracts and Agreements Between the Inventors (Knight and Scallen, Knight, Mann and*

*Scallen) and the University of New Mexico Concerning Inventions, Patents and Patent Applications are Null and Void Due to Failure of Consideration; Recission* [sic] *(Cancellation) of All Such Contracts and Restitution (Return of Ownership) of All Knight and Scallen (Knight, Mann and Scallen) Inventions, Patents, and Patent Applications to the Inventors thereof; Declaration of Terence J. Scallen, MD., PH.D., November 28, 2003,* filed December 1, 2003 (*Doc. 409*) is DENIED;

IT IS FURTHER ORDERED that Defendants Knight and Scallen shall pay the fees of the Special Master appointed in this case with joint and several liability, as costs of this action, together with its costs of action from Defendants Knight and Scallen, with joint and several liability in the sum of $63,887.33.

DATED January 8, 2004.

_____
SENIOR UNITED STATES DISTRICT JUDGE